UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SONYA LEE PAGE, | |
| Plaintiff, | Case No. 3:22-cv-00239 |
| v. | Judge Eli J. Richardson |
| SOCIAL SECURITY ADMINISTRATION, | Magistrate Judge Alistair E. Newbern |
| Defendant. | |

To:     The Honorable Eli J. Richardson, District Judge

## REPORT AND RECOMMENDATION

Plaintiff Sonya Lee Page filed this action under 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of the final decision of the Acting Commissioner of the Social Security Administration (SSA) denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and for supplemental security income (SSI) under Title XVI of the Social Security Act, *id.* §§ 1381–1383f. (Doc. No. 1.) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 5.) Page has filed a motion for judgment on the administrative record (Doc. No. 17), to which the Acting Commissioner has responded in opposition (Doc. No. 20), and Page has filed a reply (Doc. No. 21). Having considered the parties' arguments and the administrative record (Doc. No. 14) as a whole, the Magistrate Judge will recommend that the Court deny Page's motion and affirm the Acting Commissioner's decision.

## I.    Background

### A.    Page's DIB and SSI Applications

Page applied for DIB and SSI on November 12, 2019, alleging that she has been disabled and unable to work since that date because of sleep apnea, back problems, heavy periods, numbness in her hands, feet, and legs, and body aches. (AR 56–57, 64–65.[1]) The Commissioner denied Page's applications initially and on reconsideration. (AR 63, 96, 97.) At Page's request, an administrative law judge (ALJ) held a telephonic hearing regarding her applications on February 18, 2021. (AR 36–55, 122–29.) Page appeared with a non-attorney representative and testified. (AR 38, 41–51.) The ALJ also heard testimony from a vocational expert. (AR 52–55.)

### B.    The ALJ's Findings

On February 26, 2021, the ALJ issued a written decision finding that Page was not disabled within the meaning of the Social Security Act and applicable regulations and denying her claims for DIB and SSI. (AR 20–31.) The ALJ made the following enumerated findings:

1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2022.

2.    The claimant has not engaged in substantial gainful activity since November 12, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

\*    \*    \*

3.    The claimant has the following severe impairments: depression, anxiety, borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

\*    \*    \*

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

---

[1]    The transcript of the administrative record (Doc. No. 14) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

*     *     *

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Limited to simple routine repetitive tasks and simple work related decisions. Can interact appropriately with supervisors, co-workers, and the general-public. Can adapt to occasional changes in the workplace. Can maintain concentration, persistence, and pace for such tasks with normal breaks spread throughout the day.

*     *     *

5.     The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

*     *     *

6.     The claimant was born on July 31, 1977 and was 42 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

7.     The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

8.     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

*     *     *

10.     The claimant has not been under a disability, as defined in the Social Security Act, from November 12, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

3

(AR 22–30.) The Social Security Appeals Council denied Page's request for review on February 14, 2022, making the ALJ's decision the final decision of the Acting Commissioner.[2] (AR 4–9.)

### C. Appeal Under 42 U.S.C. § 405(g) and § 1383(c)(3)

Page filed this action for review on April 5, 2022 (Doc. No. 1), and this Court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3).

Page argues that remand is warranted because the ALJ improperly evaluated a 2015 medical opinion from state agency consultant Kathy Seigler, Psy.D., in violation of SSA regulations. (Doc. No. 17-1.) The Acting Commissioner responds that the ALJ complied with SSA regulations and that substantial record evidence supports his decision. (Doc. No. 20.) Page filed a reply in support of her motion for judgment on the administrative record. (Doc. No. 21.)

### D. Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to address the parties' arguments.

## II. Legal Standards

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether

---

[2]    The Acting Commissioner was appointed to replace the former Commissioner on July 9, 2021. *See Soc. Sec. Admin.—Legality of Serv. of Acting Comm'r*, B-333543, 2022 WL 326059, at *2 (Comp. Gen. Feb. 1, 2022).

it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

### B.     Determining Disability at the Administrative Level

DIB and SSI benefits are available to individuals who are disabled, which is defined in this context as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (explaining that this definition applies in the DIB and SSI contexts).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). For purposes of this case, the regulations governing disability determination for DIB and SSI benefits are identical. *See Colvin*, 475 F.3d at 730 (citing 20 C.F.R. §§ 404.1520, 416.920). At step one, the ALJ considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "[I]f the claimant is performing substantial gainful activity,

5

then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments [that meets the durational requirement], then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled." *Miller*, 811 F.3d at 834 n.6. If not, the ALJ proceeds to step four. *Combs*, 459 F.3d at 643; *see also Walker v. Berryhill*, No. 3:16-1231, 2017 WL 6492621, at *3 (M.D. Tenn. Dec. 19, 2017) (explaining that "[a] claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability and ends the inquiry"), *report and recommendation adopted*, 2018 WL 305748 (M.D. Tenn. Jan. 5, 2018).

At step four, the ALJ evaluates the claimant's past relevant work and "'residual functional capacity,' defined as 'the most [the claimant] can still do despite [her] limitations.'" *Combs*, 459 F.3d at 643 (alterations in original) (quoting 20 C.F.R. § 404.1545(a)(1)); *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). If the claimant's residual functional capacity (RFC) permits her to perform past

relevant work, she is not disabled. *Combs*, 459 F.3d at 643. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of [her] residual functional capacity, age, education, and work experience," a claimant can perform other substantial gainful employment. *Id.* While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "Claimants who can perform such work are not disabled." *Combs*, 459 F.3d at 643; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.    Analysis

Page's only argument in support of judgment on the administrative record and remand is that the ALJ failed to properly evaluate medical evidence from an interview and examination conducted by Kentucky state agency consulting examiner Kathy Seigler, Psy.D., in 2015. (Doc. Nos. 17-1, 21.)

For DIB and SSI claims filed on or after March 27, 2017, SSA regulations provide that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from [the claimant's] medical sources."[3] 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must "evaluate the

---

[3]     This is a departure from the regulations governing claims filed before March 27, 2017, which "[g]enerally . . . g[a]ve more weight to the medical opinion of a source who ha[d] examined [the claimant] than to the medical opinion of a medical source who ha[d] not examined [the claimant]." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Those regulations—known as the treating physician rule—specifically required an ALJ to give controlling weight to a medical opinion from the claimant's treating physician if the opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with other substantial evidence in [the] case record[.]" *Id.* §§ 404.1527(c)(2), 416.927(c)(2).

persuasiveness" of all medical opinions and prior administrative medical findings based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors including, but not limited to, evidence showing that the medical source is familiar with other evidence in the record or has an understanding of the SSA's policies and evidentiary requirements. *Id.* §§ 404.1520c(a), (c)(1)–(5), 416.920c(a), (c)(1)–(5). The regulations specifically require ALJs to "articulate in [their] determination[s] or decision[s] how persuasive [they] find all of the medical opinions" in a claimant's record. *Id.* §§ 404.1520c(b), 416.920c(b).

Supportability and consistency are "[t]he most important factors" in this analysis. *Id.* §§ 404.1520c(a), 416.920c(a). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). In assessing consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). The SSA has promised claimants that it "will explain how [it] considered the supportability and consistency factors . . . in [its] determination or decision" and "may, but [is] not required to, explain how [it] considered the [remaining] factors . . . ."[4] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). "A reviewing court 'evaluates whether the ALJ properly considered the factors as

---

[4]    This differs from the regulations governing SSI claims filed before March 27, 2017, which promised claimants that the SSA would "always give good reasons in [its] notice of determination or decision for the weight [it] g[a]ve [the] treating source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

set forth in the regulations to determine the persuasiveness of a medical opinion.'" *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)).

Seigler interviewed and examined Page on January 13, 2015, in connection with a prior benefits application and at the request of Kentucky's disability services agency. (AR 277–84.) Seigler's consulting medical opinion includes the following findings:

> **PSYCHIATRIC HISTORY:** In the area of mental health, [Page] reports psychotropic treatment in the past for having a "nervous breakdown" in the early 1990s. No records were available for review.
>
> The claimant provided a 1-page (double-sided) handwritten description of her mental and physical health problems. The document was somewhat rambling and disorganized. These are a few selected excerpts:
>
>> "Nervous breakdown was evaluated hospitalized found with date rape drug ever since my mind runs 24/7 lose sleep have trouble concentrating cant [sic] concentrate trouble understanding, forget, cant [sic] remember."
>>
>> "I'm talking 2 myself in front of somebody facial expressions hurting my face" (written in the margin)
>>
>> "2 the inside of my body feels like somebody is taking a knife stabbing my body gets dizzy can pass out bad headaches that I throw up face breaks out in spots"
>>
>> "automobile phobia cant [sic] go anywhere [o]r do anything scared of the rd [sic]. I don't like crowds, people, talking nerves get tore up stresses me out body breaks out in wheps [sic] lay down and rest alone [i]n a quite [sic] place calm myself down, depression, ill, cry a lot"
>
> She endorsed current problem with depression, anxiety, panic attacks and "talking a lot out of my head". She denies hearing voices, paranoia or cutting herself.
>
> Symptoms include a depressed mood daily, hopelessness, irritability, worthlessness, avolition, problems concentrating and feeling overwhelmed with simple tasks. She denies suicidal ideations, anhedonia or changes in appetite or

sleep. She reports feeling anxious in social settings or when driving. She stated she has a "road phobia," and is scared that they will wreck.

She reports being placed on a 72-hour hold at a psychiatric hospital in 1993 for having a "nervous breakdown." However, the claimant then stated she had a drink that was laced with a date-rape drug, which may have been the actual reason she was admitted.

In the area of substance use, the claimant smokes cigarettes, consumes caffeine and drinks alcohol occasionally. She denies using pain pills, marijuana, cocaine or other illicit drugs. She reports a history of marijuana use on-and-off for at least 20 years until 2010.

**LEGAL HISTORY:** Legal history is not remarkable.

**ACTIVITIES OF DAILY LIVING:** The claimant reports her sleep is poor and irregular. She reports her mind races at night due to stress. With regards to personal hygiene, she bathes and brushes her teeth daily. She eats 2-3 meals daily.

The claimant reports she is capable of doing housework. She is able to manage bills and shop for household goods without assistance.

Recreationally, she watches t.v., spends time on the computer and plays with her daughter. Socially, she [is] inactive and isolative. She reports she does not have friends.

**MENTAL STATUS EXAM:** Sonya Page is a friendly, 37--year--old, divorced, Caucasian female. She is an unreliable historian. She is 5'5' and weighs 150 pounds. Clothing was appropriate for age and occasion. Cosmetic use was age appropriate. Grooming appeared normal. Her gait and posture appeared normal. Motor activity during the assessment was not remarkable.

The claimant was able to spell the word "WORLD" backwards. She could recite up to a 5—digit series of numbers forward and a 4-digit series in reverse. Each time, the claimant had to be reminded to say the digits in reverse.

She was unable to count backwards from 20 by 3s (Response: This is hard. I can't do it). She was able to correctly answer 2 out of 3 basic arithmetic questions (8+5=13; 7x4=28; $1.00-.17=IDK).

The claimant's attention appeared normal and anxiety interfered with concentration. She was oriented to person, place and time. She was able to recall 1 out of 3 unrelated words after a 15 minute delay, suggesting impairment with immediate memory. She report[ed] her memory problems are starting to worry her.

The claimant's eye contact was normal. Her facial expression appeared responsive. Her attitude towards the examination was cooperative.

Her affect appeared appropriate and mood was anxious. On a scale of 1 to 10, with 10 being most symptomatic, the examiner rated the claimant's mood an 8.

The claimant's speech was circumstantial and rambling at times. Her thought content appeared appropriate to mood and circumstances. The organization of her thought processes appeared logical and goal-directed. There is no evidence of a formal thought disorder.

The claimant's fund of knowledge appeared Extremely Low. She was able to name the current president. She was unable to name 3 large cities (Response: I don't know what a city would be. I ain't that smart.), the state capital (Response: I don't know), the direction the sun rises (Response: I don't know), the past president (Response: Bill Clinton) or the number of weeks in a year (Response: I don't know).

The claimant's ability for abstract thinking appeared intact. Judgment and reality testing was good. Insight into the nature of her difficulties appeared fair. Her decision making skills appeared simplistic.

Current stressors include her mental and physical health problems. Her coping abilities appeared poor and are overwhelmed. Her mother is her support system. Social maturity appeared isolative.

**DIAGNOSTIC IMPRESSION:**

| | |
|---|---|
| AXIS I: | Major Depressive Disorder, Severe, without psychotic, with anxious distress. |
| | Social Anxiety Disorder. |
| | Rule Out Neurocognitive Disorder. |
| | Rule Out Intellectual Disability. |
| | Rule Out Bipolar II. |
| AXIS II: | Borderline Intellectual Functioning. |
| AXIS III: | Defer to MD. |
| AXIS IV: | Moderate. |
| AXIS V: | Current GAF is 50–51. |

**FUNTIONAL CAPACTICIES:**

SLIGHT: There is mild limitation in this area, but the individual can generally function well.

MODERATE: There is moderate limitation in this area, the ability to function is severely limited but not precluded.

EXTREME: There is major limitation in this area. There is no useful ability to function in this area.

1.    The claimant's capacity to understand, remember, and carry out instructions towards performance of simple and repetitive tasks appears affected by her Major Depressive Disorder, Social Anxiety Disorder and Borderline Intellectual Functioning to a moderate degree.

2.    Her ability to tolerate stress and pressure of day-to-day employment appears affected to a marked degree.

3.    Her ability to sustain attention and concentration towards the performance of simple, repetitive tasks appear[s] affected to a marked degree.

4.    Her capacity to respond appropriately to supervisors and coworkers in a work setting appears affected to a moderate degree.

(AR 279–83.) Emily Skaggs, Psy.D., co-signed Seigler's opinion. (AR 283.)

The ALJ analyzed Seigler's opinion with other record evidence regarding Page's mental residual functioning capacity:

In regards to her mental health, in January of 2015, the claimant went to a psychological consultative examination at the request of the State agency disability determination service (Exhibit 1F). The claimant reported she had a "nervous breakdown" in the early[ ]1990s. Dr. Kathy Seigler opined that the claimant had moderate and marked limitations. Her opinion is unpersuasive for the current period at issue because it is too old and it is not well supported by treatment evidence.

The claimant sought mental health treatment at [Community] Mental Health [Center] in December 2019 (Exhibit 3F, page 2). On December 27, 2019, the claimant reported daily living activities she reported severe health practices, no impairment in housing stability or maintenance, a mild impairment in communication, no impairment in safety, mild impairment in managing time, money and nutrition. She reported moderate difficulties with her problem-solving abilities and mild problems with family relationships (Exhibit 3F, page 56–57). A physical examination revealed that the claimant had tangential thought process but all other areas were within normal limits (Exhibit 3F, page 59) She reported experiencing periods of time when her [thinking] speeds up and she has difficulty keeping up with her thoughts. She also reported that she has periods of time where she felt she could not trust family or friends and that she has experienced hallucinations. However, on April 24, 2020[,] the claimant denied ever having hallucinations (Exhibit 3F, page 68).

She reported past traumatic events. However, she reported a primary concern was that her medical issues cause her to lose her ability to complete daily functioning. She reported some depression years ago at the loss of a child. She denied her previous statement that she had hallucinations. She reported feelings of worthlessness and anxiety. She also reported back pain and a need to wear a diaper. Although she had previously reported a history of abuse, she denied any physical sexual or emotional abuse (Exhibit 3F, page 5). She reported physical problems and reported that she takes no prescribed medications. A mental status exam was completed and it indicates that the claimant was unkempt with normal speech and orientation. Her affect was sad and her psychomotor behavior was appropriate. She endorsed feelings of worthlessness, helplessness and hopelessness. Her thought process was organized and her mood indicated bereavement. Her memory was good but concentration was poor. She had appropriate insight judgment and impulse control. She was diagnosed by a clinician with unspecified anxiety and depressive disorders (Exhibit 3F, page 12[ ]). The claimant was often unavailable for telephone services. Phone contact was made in March of 2020. The claimant was made aware that she had not had any contact with [Community] Mental Health [Center] since her initial appointment in December. The claimant said that she was applying for disability and that she needed help with showing that she is receiving help for her mental stability. The case manager asked if the claimant needed any resources or any other services and the claimant said no (Exhibit 3F, page 29). The claimant was referred to the health department for her physical health care needs. The case manager explained that their services are free for those who cannot afford it. The claimant reported that she does not trust anyone and does not let anybody into her car or her home (Exhibit 3F, page 40).[ ] The claimant reported that she is afraid of dying and that she keeps her self[ ]motivated by watching movies, playing games on her phone, and enjoys putting together puzzles (Exhibit 3F, page 77). In May of 2020, the claimant said that her problem was that she wanted to get disability (Exhibit 3F, page 50). She was prescribed Lexapro and BuSpar (Exhibit 3F, page 67).

*    *    *

As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings as follows: the treatment records from [Community] Mental Health indicate an estimated global assessment of functioning score of 49.5. A global assessment of functioning rating is only a snapshot opinion about the level of functioning. It is one opinion that has been considered with all the evidence about the claimants functioning. The clinician has not clearly explained the reasons behind the rating, and the period to which the rating applies. It does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis. Therefore, the undersigned finds the opinion to be unpersuasive.

On the claimant's initial application, the State agency disability determination service was unable to provide a physical or mental residual functional capacity assessment due to lack of cooperation and insufficient evidence (Exhibit 1A).

.... On June 20, 2020, Dr. Paula Kresser, PhD, examined all the available evidence. [Sh]e indicated that the claimant had a severe depressive or bipolar related disorder, borderline intellectual functioning, and anxiety (Exhibit 3A). [Sh]e opined that the claimant had mild limitations in her ability to understand, remember, or apply[ ] information and mild limitations in her ability to interact with others. Dr. Kresser further opined that the claimant had moderate limitations in her ability to concentrate, persist[ ], maintain pace and manage herself. The undersigned accepts this opinion as it limits the claimant to simple routine repetitive tasks and occasional changes. This is consistent with the medical evidence and exhibit 3F, page 56. Which shows only mild to moderate limitations in activities of daily living with the exception of poor health practices.

The undersigned did not find the opinion of Dr. Emily Skaggs to be persuasive because it is too remote and was only a one time evaluation from 2015 (Exhibit 1F).

(AR 27–29.)

Page argues that the ALJ's "one-sentence cursory evaluation [ ] dismiss[ing] the findings of Dr. Seigler based solely on the date of assessment" "does not satisfy an ALJ's duty to explain the important factor of supportability" and that "[t]he ALJ further erred by failing to conduct any analysis as to the consistency of Dr. Seigler's opinion with other evidence of record." (Doc. No. 17-1, PageID# 463, 465.) She argues that remand is warranted for reconsideration of Seigler's opinion that Page is "markedly limited in her ability to tolerate the stress and pressure of day-to-day employment[,]" "markedly limited in her ability to sustain attention and concentration[,] and moderately limited in her capacity to respond appropriately to supervisors and coworkers in a work setting." (*Id.* at PageID# 466.)

The Acting Commissioner concedes "that the ALJ did not conduct any analysis of the consistency of the opinion with other evidence of record as required by 20 C.F.R. § 404.1520c(c)(2) . . . ." (Doc. No. 20, PageID# 478.) However, the Acting Commissioner argues that the ALJ was not required to evaluate Seigler's opinion at all in formulating Page's RFC

because SSA regulations only require evaluation of relevant evidence and Seigler's opinion, which predates Page's alleged disability onset date by more than four years, is too old to be relevant to her current DIB and SSI claims. (Doc. No. 20.) Alternatively, the Acting Commissioner argues that any error in the ALJ's analysis was harmless. (*Id.*)

Page replies that the ALJ was required to consider Seigler's opinion because medical evidence predating a claimant's disability onset date may help establish current disability when considered in combination with corroborating evidence from within the disability period. (Doc. No. 21.)

The Court agrees with Page that the Acting Commissioner's argument that Seigler's opinion is too old to be relevant to her current claims based only on the date of Seigler's assessment misses the mark. The Sixth Circuit "do[es] not endorse the position that all evidence or medical records predating the alleged date of the onset of disability, or evidence submitted in support of an earlier proceeding, are necessarily irrelevant or automatically barred from consideration by *res judicata*." *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 414 (6th Cir. 2006). Instead, courts in this circuit "recognize that evidence presented at an earlier hearing or predating the onset of disability, when evaluated *in combination with later evidence*, may help establish disability." *Id.*; *see also Shelton v. Comm'r of Soc. Sec.*, No. 2:18-cv-00093, 2020 WL 707586, at *9 n.3 (M.D. Tenn. Feb. 12, 2020) (quoting *DeBoard*, 211 F. App'x at 414), *report and recommendation adopted*, 2020 WL 1284628 (M.D. Tenn. Mar. 18, 2020); *Audra E. v. Comm'r of Soc. Sec. Admin.*, No. 2:22-cv-1815, 2023 WL 2633669, at *6 (S.D. Ohio Mar. 24, 2023) (quoting *DeBoard*, 211 F. App'x at 414). Thus, Seigler's opinion may be relevant when considered in the context of other record evidence from after the claimed onset of disability. The Acting Commissioner concedes that the ALJ did not comply with SSA regulations that required him to analyze "the consistency

of [Seigler's] opinion with other evidence of record as required by 20 C.F.R. § 404.1520c(c)(2) . . . ." (Doc. No. 20, PageID# 478.)

The question thus becomes whether the ALJ's conceded error was harmless.

Page argues that the ALJ's error was not harmless because, "if the ALJ had properly evaluated [Seigler's] opinion," the ALJ would have adopted Seigler's opined marked and moderate limitations and "would have [ ] found [Page] disabled." (Doc. No. 17-1, PageID# 466–67.) Page concedes, however, that Seigler's opinion may be used to establish disability only in combination with later evidence from within the disability period. (Doc. No. 21.)

The only later evidence Page identifies to corroborate Seigler's opinion are her treatment records from the Community Mental Health Center (CMHC) from April and May 2020. (Doc. No. 17-1.) According to Page, these records show that, during a telehealth appointment on April 3, 2020, she "reported struggling with fear of dying and treating provider Amanda Beckham, M.A., noted that [Page] had difficulty staying on topic and endorsed an increase in depression." (*Id.* at PageID# 465–66 (citing AR 372–73).) Page also points to CMHC records showing that, shortly thereafter, Mary Linville, M.S.N., prescribed her "Lexapro 10 mg to be taken daily for depression and Buspar 5 mg for anxiety," but Page returned to CMHC on May 18, 2020, and "reported [to Linville] that she was still anxious and depressed despite treatment with psychotropic drugs." (*Id.* at PageID# 466 (citing AR 360).) Page also "expressed interest in Xanax as treatment" and "reported irritability and thoughts of self-harm." (*Id.*) Page argues that the ALJ "did not consider these findings." (*Id.*)

The ALJ's written decision discussed Page's CMHC records at length, addressing the records from April and May 2020 and from December 2019, and specifically finding that Page "was diagnosed by a clinician with unspecified anxiety and depressive disorders[,]" "was

16

prescribed Lexapro and BuSpar[,]" and "reported that she is afraid of dying . . ." (AR 28.) But the CMHC evidence Page identifies does not support Seigler's 2015 opinion that Page experiences a marked limitation in tolerating the stress and pressure of day-to-day employment, a marked limitation in sustaining attention and concentration toward even simple and repetitive tasks, and a moderate limitation in responding appropriately to supervisors and coworkers in a work setting. On the contrary, CMHC records from April and May 2020 show that Linville found Page's "[r]ecent/[r]emote [m]emory[,]" "[a]ttention/[c]oncentration[,]" and "[m]ood and [a]ffect" were all within normal limits. (AR 356, 362.) Page's initial CMHC evaluation in December 2019 documents "[m]ild" impairments in "[c]ommunication[,]" "[m]anaging [t]ime[,]" and "[s]ocial [n]etwork" and "[m]oderately severe" impairments in "[p]roblem [s]olving[,]," "[p]roductivity[,]" and "[c]oping [s]kills[.]" (AR 352.) Page's only "stressors" identified in the CMHC records are "[f]inancial" and "COVID19." (AR 360, 373.) Page has not identified any other evidence from within her alleged disability period to substantiate Seigler's earlier findings of marked and moderate limitations.

Courts in this circuit generally will excuse an ALJ's procedural error as harmless "unless it prejudices the claimant on the merits or deprives him of substantial rights." *Lorraine R. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-00396, 2022 WL 4232839, at *4 (S.D. Ohio Sept. 14, 2022) (citing *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009)). But a court's ability to excuse an ALJ's procedural error depends "upon the nature of the regulation" with which the ALJ did not comply "and the importance of [the] procedural safeguard" the regulation establishes. *Id.* For example, in *Wilson v. Commissioner of Social Security*, the Sixth Circuit held that an ALJ's failure to comply with the treating physician rule—which 20 C.F.R. § 404.1520c and § 416.920c replaced—will rarely be excused because that rule "bestow[ed] a

'substantial right' on parties before the agency[.]" 378 F.3d 541, 547 (6th Cir. 2004). Under *Wilson*, an ALJ's failure to articulate good reasons for less than fully crediting a treating physician's medical opinion, as required by the treating physician rule, could

> only be excused as harmless if the medical opinion "[was] so patently deficient that the Commissioner could not possibly credit it," if the violation [was] irrelevant because the Commissioner "adopt[ed] the opinion . . . or ma[de] findings consistent with [it]," or if the goal of the procedural safeguard [was] otherwise met.

*Lorraine R.*, 2022 WL 4232839, at *4 (fourth and sixth alterations in original) (quoting *Wilson*, 378 F.3d at 547); *see also Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (quoting *Wilson*, 378 F.3d at 547).

"The Sixth Circuit has yet to articulate a harmless error test under the revised" regulations governing ALJs' consideration of medical opinions. *Musolff v. Comm'r of Soc. Sec.*, No. 1:21-CV-1739, 2022 WL 1571864, at *13 (N.D. Ohio Apr. 27, 2022), *report and recommendation adopted*, 2022 WL 1568478 (N.D. Ohio May 17, 2022); *see also Lorraine R.*, 2022 WL 4232839, at *4. However, several district courts in this circuit have found that the *Wilson* harmless error test applies to an ALJ's failure to explain their consideration of the supportability and consistency factors under the revised regulations. *See Musolff*, 2022 WL 1571864 at *13 (collecting cases); *Lorraine R.*, 2022 WL 4232839, at *4 (citing *id.*); *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021) (quoting *Wilson*, 378 F.3d at 547); *Greggs v. Kijakazi*, No. 1:22-cv-0041, 2023 WL 3746478, at *9 (M.D. Tenn. May 31, 2023) (first citing *Lorraine R.*, 2022 WL 4232839, at *4–5; and then citing *Musolff*, 2022 WL 1571864, at *13), *report and recommendation adopted*, 2023 WL 4317265 (M.D. Tenn. July 3, 2023).

In *Lorraine R.*, the court reasoned that the *Wilson* test should apply because "the function and purposes of the mandatory articulation rule in Section[s] 404.1520c(b)(2) [and

416.920c(b)(2)] are similar to those of the good reasons requirement at issue in *Wilson*." 2022 WL 4232839, at *5. The court further explained that:

> The mandatory articulation requirement . . . serves the same purposes as the good reasons requirement of the treating physician rule. By requiring ALJs to articulate their analysis of the most important factors to consider when determining the persuasiveness of medical opinions (i.e., supportability and consistency), the requirement permits meaningful judicial review. It also ensures that claimants will receive an explanation of why the ALJ found each medical opinion, including those of their treating physician, to be persuasive, partially persuasive, or not persuasive.

*Id.*

This Court agrees and concludes that the *Wilson* harmless error test applies to an ALJ's failure to comply with 20 C.F.R. § 404.1520c(b)(2) and § 416.920c(b)(2). Thus, an ALJ's failure to articulate consideration of the supportability and consistency factors in analyzing a medical opinion "may be harmless when: (1) the opinion is so patently deficient that it could not be credited; (2) the opinion was actually adopted; or (3) the ALJ met the goal of these procedural safeguards, despite failing to strictly comply with the regulations." *Musolff*, 2022 WL 1571864, at *13 (citing *Friend*, 375 F. App'x at 551).

The third "circumstance may take the form of an 'indirect attack,' when the ALJ's analysis of other opinions in the record or of the claimant's ailments calls to question the supportability of the opinion or its consistency with other evidence." *Id.*; *see also, e.g.*, *Burba v. Comm'r of Soc. Sec.*, No. 1:19-CV-905, 2020 WL 5792621, at *4 (N.D. Ohio Sept. 29, 2020) (finding that ALJ's failure to comply with mandatory articulation requirement was harmless error where ALJ "met the goals of the regulation by indirectly attacking the consistency of [an] opinion with evidence from other medical sources"). "The key question in determining whether an 'indirect attack' satisfies the spirit of the regulatory framework is whether the analysis as a whole permits the claimant and reviewing court to glean a 'clear understanding' of the reasons . . . the limitations in an opinion were not adopted." *Musolff*, 2022 WL 1571864, at *13 (quoting *Friend*, 375 F. App'x 551); *see*

*also Vaughn v. Comm'r of Soc. Sec.*, No. 20-cv-1119, 2021 WL 3056108, at *12 (W.D. Tenn. July 20, 2021) (finding that ALJ's failure to comply with 20 C.F.R. § 404.1520c was harmless "[b]ecause the ALJ's decision on the whole g[a]ve[ ] the court a logical understanding of why she believed [the] opinion lacked record support . . .").

Considering the ALJ's written decision as a whole, the Court finds that this case presents a rare circumstance where the ALJ otherwise complied with the goal of the new regulations by indirectly attacking the supportability and consistency of Seigler's opinion. *See Musolff*, 2022 WL 1571864, at *13–16; *Burba*, 2020 WL 5792621, at *4; *Vaughn*, 2021 WL 3056108, at *12. The ALJ stated that Seigler and Skaggs's "opinion is unpersuasive for the current period at issue because it is too old[,]" "was only a one time evaluation from 2015[,]" and "is not well supported by treatment evidence." (AR 27, 29.) The ALJ also discussed the mental health treatment and opinion evidence from within Page's disability period in detail and explained why that evidence only supported the limitations adopted in the ALJ's RFC. (AR 27–29.) The ALJ specifically analyzed the CMHC treatment records from 2019 and 2020 and Kresser's consulting opinion from 2020, finding that Kresser's opined mild limitations in understanding, remembering, or applying information and interacting with others and moderate limitations in concentrating, persisting, and maintaining pace and managing herself were consistent with the CMHC treatment records and supported an RFC limiting Page "to simple routine repetitive tasks and occasional changes." (AR 29.) The ALJ's analysis of this evidence also demonstrates that it is inconsistent with Seigler's opined marked and moderate limitations from 2015.

The ALJ's analysis as a whole is therefore sufficient to provide Page and this Court with a clear understanding of the ALJ's reasons for discounting Seigler's opined marked and moderate limitations. *See Musolff*, 2022 WL 1571864, at *13–16; *Burba*, 2020 WL 5792621, at *4; *Vaughn*,

2021 WL 3056108, at *12. Consequently, the ALJ's procedural error is harmless and does not justify remand "[b]ecause the ALJ's decision on the whole gives the court a logical understanding of why [the ALJ] believed [Seigler's] opinion lacked record support" and thus satisfies "the regulation's goal for the ALJ to 'provide a coherent explanation of his or [her] reasoning' as to how persuasive a physician['s] opinion is . . . ." *Vaughn*, 2021 WL 3056108, at *12 (fourth alteration in original) (quoting *Lester v. Saul*, No. 5:20-cv-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021)).

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Page's motion for judgment on the administrative record (Doc. No. 17) be DENIED and that the Court AFFIRM the Acting Commissioner's decision denying Page's applications for DIB and SSI.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 2nd day of August, 2023.

ALISTAIR E. NEWBERN
United States Magistrate Judge